## Louisville & Nashville Railroad Company v. Ashley.

(Decided March 22, 1916.)

### Appeal from Franklin Circuit Court

1.  Carriers—Passengers—Duty of Carriers Toward.—One who enters a coach of a railway train, wherein his ticket does not authorize him to ride, by mistake, may be required by the servants of the railroad to go into another coach, to ride in 'which he has a ticket, but they must exercise ordinary care for the safety of such person, as to the time, place and manner of his removal, and if there is a failure to exercise such care, it is negligence.

2.  Carriers—Passengers—Negligence.—It is not negligence per se for a passenger upon a railroad train to stand or walk about in a car, or to go from one coach to another, while the train is in motion, but it is a question of fact, to be determined from all the circumstances, as to whether or not such acts upon the part of a passenger are negligence.

3.  Carriers—Passengers—Negligence.—While it is not negligence, as a matter of law, for a servant of a railroad to require a passenger, while the train is in motion, to remove from one coach, in which he has no right to be, into another, it is a question of fact to be determined from all the circumstances of each particular case as to whether or not such act was negligence upon the part of the servant of the railroad.

4.  Carriers—Passengers—Negligence.—If the servant of the railroad knows or by the exercise of ordinary care could know, that from age, bodily infirmity, the speed and motion of the train, or other circumstances, that the safety of a passenger would be endangered

and injury to him to be reasonably expected by requiring him to remove from one coach to another, while the train is in motion, it would be negligence to require the removal under such circum-stances.

GUY H. BRIGGS and BENJAMIN D. WARFIELD for appellant.

SCOTT & HAMILTON for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellee, Nancy Ashley, intending to take passage upon a train of the appellant, Louisville & Nashville Railroad Company, from Frankfort to Pleasureville, obtained a ticket and proceeded to the train, which was standing in the yard of appellant at Frankfort. She accosted a brakeman, who was standing near the train, and informed him of where she desired to go, when he directed her to take the rear coach of the train. This was a car of the Pullman Company, and when she arrived at the car she informed the porter in charge of the car of her destination and inquired of him, if that was the car that she should enter and he directed her to get into it. She was accompanied by a young woman, who, also, entered the car with her, where they took seats in chairs, near the middle of the coach. Neither of them was intending to take passage in the Pullman, and did not know that an extra fare would have to be paid by them for riding in the car. They had each ridren on trains over this road previous to this time, but had not occupied the Pullman or chair car, but the coach which they had always occupied was the rear coach upon the train, which position in the train was occupied by the coach they were now occupying. The appellee's account of what transpired thereafter, and which resulted in an injury to her arm and shoulder, and in which she was corroborated by the woman who accompanied her, was substantially as follows:

When the train had passed the water tank, a short distance to the west of Frankfort, and was running at a high rate of speed, the porter came through the car and demanded of appellee her fare, when she presented him the ticket which she had obtained for passage on the train, and he said to her that he did not want that, but that she would have to pay "a quarter" extra for riding in the car. She said that she did not know that, when she came into the car and that she was only going

a short distance to Christianburg—and did not want to pay it. He said, ''You will have to get up and go into the other coach then.'' She said, ''That she was somewhat old, and could not walk well while the train was running and could not get around well on a train, and would rather wait until it stopped.'' He came a second time to her, and said, ''I told you to go back into another coach,'' in a very positive voice and emphatic manner. She kept her seat, and when near Benson, he came again and said, ''I have told you to go back into another coach—this is the third time.'' The train was running at a high rate of speed, and she was a large fleshy woman, burdened with a bundle and a suitcase, and the train had not come to a stop at any time since she had been directed to leave the coach and go into another. She then arose and started to leave the coach, when the train, which was then running upon a curve, gave a lurch, which threw her down upon a chair and then to the floor, and bruised her arm and shoulder. She arose from the floor and waited a few moments until the train slowed up, in its approach to Benson, when, with the assistance of the woman who accompanied her, she went out of the Pullman coach into the next coach. The porter offered her no assistance of any kind, and does not seem to have been present when she fell. The evidence of the porter was to the effect, that before directing appellee to go into the chair car, at the depot at Frankfort, he inquired of her if she desired to ride in the Pullman, and that she said that she did, and then when she refused to pay the fare required for riding in the chair car, in addition to the ordinary fare for riding upon the train, that he told her that she would have to go into another car, but directed her to remain until the train stopped, and that he offered to assist her in going into another coach, but she refused to permit him to do so. These statements of the porter were contradicted by appellee and her companion.

This suit was brought by the appellee to recover the damages, which she alleged she had suffered, and alleged that her injuries were caused by the negligence of the servants of appellant.

The appellant denied the negligence and the injuries, and plead, as a further defense, the contributory negligence of appellee.

The jury returned a verdict for appellee in the sum of $1,200.00, and a judgment was rendered accordingly.

The appellant's motion for a new trial was overruled and it has appealed.

The appellant relies for a reversal of the judgment upon the grounds: (1) That there was no evidence of any negligence upon the part of appellant; (2) the damages allowed are excessive, and given under the influence of passion and prejudice; (3) errors of the court in admitting incompetent evidence for appellee, and rejecting competent evidence offered for appellant; (4) errors of the court in giving instructions to the jury.

At the close of the evidence offered by appellee, and at the conclusion of all the evidence, the appellant moved the court for a direct verdict, by the jury, in its favor, but both motions were overruled and properly so. It is not claimed that any negligent act, in the operation of the train, resulted in or caused the injuries to appellee. The appellee, however, was not a trespasser nor an intruder upon the train. She had purchased a ticket, which entitled her to ride upon the train, and she presented this ticket to the porter when her fare was demanded. She had gone into the coach, to which she was directed to go by the brakeman and by the porter who was in charge of the Pullman car, she had informed them of her destination, and asked for information as to which coach she should enter. It is true, that she did not inform either of them that she did not desire to ride in the Pullman car, but neither of them, before directing her, according to her evidence, inquired of her as to whether she desired to go in such coach. The porter testified that he made inquiry of her as to whether she desired to go into the Pullman, but she denies this. Conceding that she had no right to ride in the Pullman car without paying or tendering the extra fare required, and that she could be required to remove from that car into another upon her refusal to pay the fare, there is no doubt but that she entered the coach by mistake, and the servants of the railroad, in removing her from the coach, were required to use ordinary care for her safety, as to the time and place and manner of her removal and if there was a failure to exercise such care, it was negligence. When she was commanded to leave the coach and go into another, it was an expulsion of her from the coach, and the same rule, it seems, should apply to

the care required to be exercised, in regard to her safety, as if she were to be ejected from a train. This court, in L. & N. R. R. Co. v. Ferrell, 7 R. 607, held that a railroad company may eject from its train one who has no right to be there, but before putting him off, must so reduce the speed of the train as to insure his safety, or must take him to the next stopping place. Even when those who are mere trespassers upon the trains, and who refuse to procure tickets or to pay fare, are ejected, the servants of the railroad company must use ordinary care to prevent injuries resulting to them, and must not make use of unnecessary force or violence in removing them. L. & N. R. R. Co. v. Fowler, 123 Ky. 450; Brown's Admr. v. L. & N. R. R. Co., 103 Ky. 211; L. C. L. R. R. Co. v. Sullivan, 81 Ky. 625; L. & N. R. R. Co. v. Ellis' Admr., 97 Ky. 332; Johnson v. Louisville, Etc. R. Co., 104 Ala. 141; Louisville, Etc. R. Co. v. Gatewood, 14 R. 108; 6 Cyc. 563. The servants of a railroad should not expel a passenger from a train at a time or place which is dangerous; and reasonable and ordinary care must be used where the expulsion is proper. Louisville, Etc. R. Co. v. Gates, 14 R. 108; Young v. Texas, Etc. R. Co., 51 La. Ana. 295. It is insisted, in the case at bar, that the rules which apply to the expulsion of passengers, do not apply to passengers, who are required to go from one coach of a train to another, while the train is in motion, because, as it is argued, that it is not negligence in a passenger to move about upon the train upon which he is riding, or to go from one coach to another. While it is true that passengers will move about in a coach, and visit their acquaintances, or for other purposes, and will go from one coach to another, and that such movements rarely result in injuries to any one, and that such actions upon their part are not acts of negligence *per se,* yet, it is properly a question of fact, under all the circumstances of each particular case, as to whether or not a passenger is negligent in standing or walking about in a car, which is in motion, or in going from one coach of a train into another, while the train is in motion. Burr v. Penna. Ry. Co., 64 N. J. L. 30; Felton v. Horner, 97 Tenn. 579; Bronson v. Oakes, 76 Fed. 734; Hill v. Birmingham Union Ry. Co., 100 Ala. 447; Galma Ry. Co. v. Warwood, 15 Ill. 468; Choate v. Antonia, Etc. Ry. Co., 90 Texas 82. Hence, while it is not negligence, as a matter of law, for a servant of a railroad to

require a passenger, while the train is in motion, to remove from one coach into another, when such passenger has no right to remain in the coach in which he is, it is a question of fact, to be determined from all the circumstances of each case, as to whether or not such act was negligence upon the part of the servant of the railroad. L. & N. R. R. Co. v. Berg's Admr., 17 R. 1105. If the servant knew or by the exercise of ordinary care could have known that from age, bodily infirmity, the speed and motion of the train, or other circumstances, that the safety of the passenger would be endangered and injury to him to be reasonably expected by requiring him to remove from one coach into another, while the train was in motion, it would be negligence to require the removal under such circumstances, and an injury incurred in an attempt to make such removal would be the proximate result of such negligence. In the instant case, the appellee was corpulent, and burdened with a bundle and suit case, and had notified the porter that she was somewhat old, and was unable to hold up and walk upon a train moving at its rate of speed, and requested to remain in her place until the  train should stop; he had knowledge of the swaying movement of the train and the rapidity  with which  it was moving, and without offering her any assistance or taking any precautions for her safety, in attempting to go from the coach to another, persisted in his demands that she go out of the coach and required her to do so. The evidence of these facts conduced to prove that he knew or by the exercise of ordinary care could have known, that for  appellee  to have  attempted  to  remove  from  one coach to another, at that time and place, and under the circumstances, would be attended with probable danger to her and that she would incur injuries was no more than was reasonably to be anticipated under the circumstances. Hence, the court below was not in error in overruling the motion of appellant for a direct verdict in its favor.

Upon the trial a photograph was offered in evidence, which it was proven showed the condition of appellee's arm, four or five days after the injury. This was objected to and appellant complains of the ruling of the court permitting it to be introduced in evidence. The complaint is without merit. The proof is to the effect, that it truthfully represents the appearance of the arm

at the time it was taken and that previous to the time of the injury, the bruise shown by the photograph was not upon the arm. 10 R. C. L. 1158-1159.

It is, also, complained that the court refused to permit the witness, Lena Perkins, to answer certain questions propounded to her upon cross-examination. There were no avowals made as to what the answers to the questions would be if she had been allowed to answer, and hence, it can not be said whether the court was in error or not in excluding the proposed answers.

Appellant complains of instruction "1" given by the court to the jury, because, as it insists, it does not require the jury to find that appellant was guilty of negligence, which was the cause of appellee's injury, before it could find a verdict for appellee. While the instruction is not aptly drawn, it is not defective for the reason alleged. It requires, before a verdict could be had for appellee, that the servant of appellant should have requested appellee to leave the coach and go into another, while the train was moving, and that the servant of appellant, in charge of the coach and who made the request knew or by the exercise of ordinary care could have known, that to require the appellee to move from her place while the train was moving would probably be attended with danger to her. If the servant required the appellee to attempt to go from one coach to another, when, under the circumstances, he knew or ought to have known that it was dangerous to appellee, to do so, this was negligence upon the part of appellant. The instruction was substantially correct, and the jury could not have been mislead as to its duty under it.

Instruction "2" defined the measure of damages, in the event of a recovery by appellee. The measure prescribed is correct under the facts proven in this case, but appellant complains that the instruction did not limit the jury, in its finding to the damages shown by the evidence. While in the light of the other instructions given we would not reverse the judgment on account of the defect complained of, upon another trial the instruction should be so written as to free it from such defect. Brenner & Seiler v. Renner, 6 R. 512; Long, &c. v. Aldridge's Admr., 5 R. 180; B. & O. S. W. R. R. Co. v. Sheridan, 31 R. 109.

The contention is made that the damages allowed are excessive and superinduced by passion and preju-

dice on the part of the jury. There is an absence of proof of any loss of time by appellee on account of the injury, and there is not any proof of any expense incurred for the cure of the injury and no diminution of the power to earn money. No permanent impairment of the power to earn money is proven or attempted to be proven. The extent of the injury seems to have been a temporarily painful bruise upon the arm, between the elbow and the shoulder, and a few minor scratches, which the photograph, taken four or five days after the injury, fails to show.

There is no evidence, which would entitle a recovery of punitive damages in this case and, the measure of compensatory damages for a personal injury, where death does not ensue, is the expense of the cure, loss of time, and fair compensation for physical and mental suffering and for any permanent reduction of the power to earn money. L. & N. R. R. Co. v. Hall, 115 Ky. 579; L. & N. R. R. Co. v. Johnson, 145 Ky. 485; Carson v. Singleton, 23 R. 1626; C. P. & R. Co. v. Kuhn, 86 Ky. 578; Parker v. Jenkins, 66 Ky. 587. The court, in the instant case, correctly confined the recovery to compensatory damages, for the physical and mental suffering which appellee had endured and which it was reasonably certain she would suffer in the future, as the proximate results of the injury. We are constrained to the conclusion that the damages allowed are grossly excessive, as they strike the mind at first blush as having been superinduced by passion or prejudice.

The judgment is therefore reversed and the cause remanded for proceedings consistent with this opinion.