# Louisville Baseball Club v. Hill.

June 12, 1942.

334

Doolan, Helm, Stites & Wood for appellant.

Hubert Sirles for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

William Donald Hill, an 11 year old boy, accompanied by his mother, while on his way to a ball game in Louisville about 7:30 P. M., on July 9, 1940, was struck in the face by a baseball which came over the fence from appellant's ball park as he was crossing a public street, Eastern Parkway. The ball cut the cheek under his left eye, also broke his nose, and in a suit brought in the name of his mother as next friend, he recovered a judgment for $2,000 compensatory damages against appellant, Louisville Baseball Club. The Club relies upon four grounds for reversal of the judgment: 1. It was entitled to a directed verdict; 2. the verdict is contrary to law; 3. the damages are excessive; 4. a statutory jury panel was not provided on the trial.

There is practically no conflict in the evidence as

to how the accident happened. Donald was on the public street in front of the ball park when a baseball came over the left field wall and struck him in the face. The wall is of brick some 20 inches thick, 11 feet high and at this point is 331 feet from home plate. The ordinary height of walls around league ball parks is from 10 to 11 feet and this is one of the largest parks in America, the wall in center field being 512 feet from home plate, with the right field wall 350 feet from the plate. There is proof that the accident happened some 15 or 20 minutes before the game started, though there is no evidence as to what caused the ball to soar over the fence—whether it was batted or thrown by a player, or whether some individual knocked or threw it, is unknown.

Appellant argues there was no evidence of negligence on its part, nor was there evidence as to how the ball happened to come over the fence, therefore it was entitled to a directed verdict. It is the contention of appellee that the doctrine of res ipsa loquitur applies. That doctrine is that where the thing which causes the injury is shown to be under the management or control of the defendant and the accident is such as in the ordinary course of events does not happen, the mere proof of the happening of the accident is sufficient evidence of negligence on the part of the one in whom such control is vested, in the absence of a showing by the defendant that the accident was attributable to causes over which he had no control. Paducah Traction Co. v. Baker, 130 Ky. 360, 113 S. W. 449, 18 L. R. A., N. S., 1185; Kniffley v. Reid, 287 Ky. 212, 152 S. W. (2d) 615.

Appellee's testimony presents a case against appellant for the application of this rule. The answer to the Club's argument that the child did not show the ball was batted or thrown by a player on its field is that under the res ipsa loquitur doctrine it was incumbent upon the Club to prove this fact as a defense after appellee established he was injured by a ball coming from the park. The doctrine of res ipsa loquitur has been applied often where objects have fallen on travelers on public streets. 38 Am. Jur. Sec. 306, p. 1003, 1004; Powers v. Rex Coal Co., 207 Ky. 761, 270 S. W. 28.

Bruce Dudley, President of the Club, testified that balls are knocked out of the park quite frequently and they are hit over the left field wall, although not very many in a single game. The testimony of Dudley, as

well as that of other witnesses for appellant, was that this is one of the most difficult parks in baseball to hit a home run on account of the size of the field. It is common knowledge that professional baseball players are trained and coached to knock the ball over the fence for a home run and that such a feat is not at all unusual. Hence we are constrained to hold that appellant had notice that balls were often knocked over this fence onto the public street and sidewalk on Eastern Parkway, and that it was bound to anticipate such balls might strike and injure persons thereon. One must so use his property as not to injure another, 50 C. J. Sec. 54, p. 780, and where a property owner suffers on his property that which endangers persons traveling on the abutting street, he is liable in damages for injuries resulting therefrom. 38 Am. Jur. Sec. 141, p. 802. Lipscomb v. Cincinnati, N. & C. St. R. Co., 239 Ky. 587, 39 S. W. (2d) 991; Weitzmann v. Barber Asphalt Co., 190 N. Y. 452, 83 N. E. 477, 123 Am. St. Rep. 560, 564; Bishop v. Readsboro Chair Mfg. Co., 85 Vt. 141, 81 A. 454, 36 L. R. A., N. S., 1171, 1177, Ann. Cas. 1914B, 1163.

Appellant places much reliance on the case of Harrington v. Border City Mfg. Co., 240 Mass. 170, 132 N. E. 721, 18 A. L. R. 610, which was followed in Dwyer v. Edison Electric Illuminating Co., 273 Mass. 234, 173 N. E. 594. In both cases a person on the street was injured by a ball batted over the fence. The Dwyer opinion holds that an employer permitting employees to play ball on a lot owned by it which adjoins a public street is not liable where a ball was knocked over a fence 200 feet from the batter's box and injured a person on the street. The reason given by those opinions for not imposing liability on the property owners was that when they permitted their employees to use their premises for recreational purposes they could not have foreseen or anticipated that the ball would be knocked over the fence and injure some person on the street, and they were not liable for the acts of the players, who at the time were not acting in the capacity of employees. But in the case at hand, appellant operated the park and the ball games played therein as a business, and the proof is to the effect that the ball was frequently knocked over the fence —indeed, one of the high points in the game is to hit the ball over the fence for a home run. The instant case is clearly distinguishable from the Harrington and Dwyer cases. Also it is distinguishable from Olds v.

St. Louis Nat. Baseball Club, Mo. App., 119 S. W. (2d) 1000, upon which appellee chiefly relies for an affirmance. Mrs. Olds was injured by a foul ball while a spectator, and the question there was whether she assumed the risk or whether defendant was negligent in screening its grandstand.

We must disagree with the appellant that the evidence entitled it to a directed verdict. On the contrary, the unexplained fact that a ball came from appellant's park where a game was about to start and struck this child while on a public street adjacent to the wall surrounding the park entitled him to a directed verdict (after all the evidence was in) that appellant was liable for the injury resulting to him from the lick. The only question which should have been left to the jury's determination was the amount of his damages.

The first instruction given imposes the duty upon appellant of using that degree of care for appellee's safety as is ordinarily exercised by careful and prudent persons engaged in a similar business under like circumstances. As the evidence shows appellant used that degree of care, it is argued that the jury was compelled to find for it, since they must follow the instructions of the court whether or not they are right or wrong; and the jury's failure to do so resulted in the verdict being contrary to law, citing Stanley's Instructions to Juries, Sec. 35, p. 51; Cooper v. Girdler, 239 Ky. 565, 39 S. W. (2d) 1009; Louisville & N. R. Co. v. Muncey, 229 Ky. 538, 17 S. W. (2d) 422, and other cognate cases. It is the rule that this court will set aside a verdict as being contrary to law where the jury disregarded instructions whether they be right or wrong. But there is an exception to this rule—where the verdict is one which under the evidence the jury should have been instructed to return, the judgment entered thereon will be upheld, although the verdict was not returned under the direction of the court. Ethington v. Rigg, 173 Ky. 355, 191 S. W. 98; Emler v. Fox, 172 Ky. 290, 189 S. W. 469. As appellee under the evidence was entitled to a directed verdict, it was immaterial whether or not the jury failed to follow the court's first instruction, so long as it found in favor of him. Maynard v. Kentucky & West Virginia Power Co., 266 Ky. 295, 98 S. W. (2d) 460.

With much vigor it is argued that the verdict is excessive. The evidence of the two specialists who

treated appellant is that his nose was fractured in two places, and the septum which divides the nose is much thicker as a result of this blow. This thickness of the septum prevents the frontal sinus from draining, which causes the nose to stop up with changes of temperature, leaving this child almost constantly with a running nose and impaired nasal passages. In the opinion of these doctors this sinus will be more prone to infection than one which has not been injured, and that when Donald reaches the age of 16 or 18 years it will be necessary that the bone and cartilage be removed from his nose. It is common knowledge that any injury to the sinus is serious and that the operation mentioned is one of considerable magnitude and expense, without complete assurance it will give the desired relief. Donald was under the care of a specialist from July until up in September, incurring doctors' bills of $150.

On the other hand, a specialist testified for appellant that there was no thickness of the septum, nor was there any permanent injury sustained by this child, which made a sharp issue for the jury on this point.

Appellant relies on Jefferson Dry Goods Co. v. Dale, 257 Ky. 501, 78 S. W. (2d) 305; Consolidated Coach Corp. v. Phillips, 236 Ky. 823, 34 S. W. (2d) 722; Trosper Coal Co. v. Crawford, 152 Ky. 214, 153 S. W. 211; Travelers' Ins. Co. v. Davies, 152 Ky. 600, 153 S. W. 956; Fischer v. Eby, 272 Ky. 554, 114 S. W. (2d) 768, as supporting its contention that the verdict is excessive. As we read and interpret these decisions, there was no substantial evidence of permanent injuries, or any injuries in excess of inconsequential flesh wounds, and this court reversed as excessive the various judgments ranging from $1000 to $2500.

There can be no fixed rule by which the measure of damages for pain and suffering can be ascertained with mathematical certainty and of necessity it must be left to the sound discretion of the jury, and unless the verdict is so out of proportion that it strikes the mind at first blush as having been rendered as a result of passion or prejudice rather than through the process of sound reasoning, an appellate court will not disturb it. Naussbaum v. Caskey, 235 Ky. 640, 32 S. W. (2d) 18. Applying this rule to the facts proven, we are unable to say this verdict is excessive.

Lastly, appellant claims that there were only 21

jurors on the regular panel, instead of not less than 24 nor more than 30 as is required by Section 2243, Kentucky Statutes, from which a venire of 18 names were drawn from which the trial jury was selected. The affidavit of its counsel is that he did not discover there was not a full statutory panel until the day following the trial, therefore he could not register his objection to the panel before accepting the jury. This court has held that the provisions of the statutes relative to the selection of jurors must be complied with, Louisville, H. & St. L. R. Co. v. Schwab, 127 Ky. 82, 105 S. W. 110, 31 Ky. Law Rep. 1313, but that noncompliance therewith may be waived by a litigant through failure to make seasonable objection, Bain v. Com. 283 Ky. 18, 140 S. W. (2d) 612.

Appellant's counsel took for granted there was a full panel instead of making inquiry of the court at the time the case was called for trial. At that time had he moved for a statutory panel there can be but little doubt he would have obtained it. By waiting until after the trial to bring the matter to the court's attention, he waived it. Although he did not discover this error until after the trial, reasonable diligence upon his part would have revealed it at the time the jury was empaneled.

The judgment is affirmed.

Whole Court sitting.