## A. H. Bowman & Company v. Williams.

(Decided June 18, 1929.)

(As Modified, on Denial of Rehearing, December 10, 1929.)

434

DODD & DODD for appellant.

STITES & STITES for appellee.

Opinion of the Court by Judge Logan—Reversing.

On the afternoon of December 29, 1926, a fire started in the building of the Louisville Bedding Company located at 418 East Main street in the city of Louisville. The building was entirely destroyed, but the west wall was left standing. This wall was 100 feet long and 50 feet high. It was inspected by the building inspector on December 30th, and the next morning notice was sent to the Louisville Bedding Company advising that the wall was dangerous. ˙ The president of the Louisville Bedding Company immediately employed the appellant, A. H. Bowman & Co., to take down the wall. The fire had not been extinguished at that time. The contract to take down the wall was made on December 31st, and on January 1, 1927, the employees of appellant began the work of taking down the wall. All admit that the wall was dangerous.

The building in which the appellee, Gustave A. Williams, resided was located at 416 East Main street, and the wall of that house was 3 feet west of the dangerous wall. That house was two stories in height, and the wall

was four stories. A large beam 12 inches by 12 inches and 40 feet long was placed against the dangerous wall in front on the west side, and a similar beam was placed against the west side of the wall at the opposite end. There were three such beams against the wall bracing it, so that its falling west might be prevented. These braces were placed against the wall by the appellant when it commenced work on the 1st day of January. As greater security long planks were placed perpendicularly against the west side of the dangerous wall and the beams rested against the planks. Other planks were placed horizontally against the walls and secured by ropes passed through the windows in the wall. After the ropes were passed through the windows and around or over the wall, they were anchored on the east side. These precautions were taken in an effort to prevent the falling of the wall towards the west while the work of taking it down was in progress. It was not possible to place braces against the west side of the wall between the house in which appellee resided and the dangerous wall, because the building to the west was not sufficiently stable and the resting of braces against it might have resulted in its being crushed.

Two of the employees of appellant scaled the wall and made some effort to remove the bricks. It was the intention of appellant to take the wall down brick by brick. These employees found the tools with which they were working unsatisfactory; they also discovered that the wall was weaving; and they hurried down, reaching the ground a moment before the wall fell.

A few minutes before the falling of the wall, appellee had gone into the rooms occupied by him in the second story of the building immediately to the west. The house was wrecked by the falling of the wall, appellee was seriously injured, and his property in the house destroyed.

Appellee instituted suit against the Louisville Bedding Company and the appellant seeking to recover damages for the personal injuries to himself and the destruction of his property, basing his action on the ground that they had negligently failed to protect him and his property from the falling of the wall. The answer denied negligence and relied on contributory negligence. At the conclusion of all of the evidence the trial court instructed the jury to return a verdict in favor of the Louisville Bedding Company, and submitted the case to the jury as to appellant. The jury found against appellee on his

claim for personal injuries, but returned a verdict for $1,400 for the destruction of his furniture and furnishings. It is obvious that the jury found against appellee on his claim for personal injuries because of his contributory negligence. He has no cross-appeal, and he has not appealed from the judgment in favor of the Louisville Bedding Company. The only question before us, or that can now be considered, is whether appellant is responsible for the destruction of his property, and whether the trial was free from errors.

It is an elementary principle of law that a man may do what he will with his own, but this right must be subordinated to another expressed in the familiar maxim, ''sic utere tuo ut alienum non lædas.'' Camfield v. U. S., 167 U. S. 518, 17 S. Ct. 864, 42 L. Ed. 260. As was held in that case, a landowner's rights will not justify his maintaining a nuisance or in carrying on a business or trade that is offensive or dangerous to his neighbors; that a man has no right to maintain a structure upon his own land which renders the occupancy of adjoining property dangerous. No person who maintains such a nuisance can shelter himself behind the sanctity of private property. Ordinarily the existence of a nuisance fixes the liability without proof of negligence on the part of the one maintaining it. When the degree of danger is obvious and so extreme as to invite calamity, a nuisance per se exists. Melker v. New York, 190 N. Y. 481, 83 N. E. 565, 16 L. R. A. (N. S.) 621, 13 Ann. Cas. 544.

It is proper for a person to make a rightful use of his property as long as that use does not interfere materially with the rights of others. But conditions may be so changed that a structure rightly used and existing on the property of the owner may become a nuisance. In the instant case the erection and maintenance of the wall in connection with the building of the Louisville Bedding Company was a legitimate use, but the fire, through its ravages, converted the wall into a nuisance, and the Louisville Bedding Company had thrust upon it immediately all of the responsibilities and liabilities of an owner who allows a nuisance on his property. It immediately became the duty of the Louisville Bedding Company, when its building was destroyed by fire, upon notice of the condition of things, to use all reasonable precautions to protect appellee from danger of the falling wall. The principles governing liability for damages from falling walls have been well stated by Judge Thompson in volume 1,

sec. 1055, of his work on Negligence, where he says: "The liability of the owner of buildings for damages caused by the falling of their walls may arise in three different relations: 1. Where the damage happens to a traveler on the adjoining street or side walk; here the governing principle is that the wall of a building abutting a public highway which is so unsafe that it is liable to fall upon the highway, injuring persons lawfully there, is a public nuisance. Such being the case, the extent to which the question of the negligence or diligence of the proprietor in inspecting and supporting the wall and preventing the catastrophe comes into play is more doubtful than other relations. 2. Where the damage happens to a co-terminous landowner; here the governing principle is that, while the proprietor whose wall is allowed to become unsafe is not an insurer in respect of its safety, yet he is bound to exercise reasonable care and skill to the end of inspecting it with the view of ascertaining whether or not it is dangerous, and to the end of repairing it if it is found to be so. 3. Where the injury received from the falling of the wall is visited upon some third person while upon the grounds of the proprietor whose wall it is; in this relation the principles already considered govern."

In the case of Ainsworth v. Lakin, 180 Mass. 397, 62 N. E. 746, 57 L. R. A. 132, 91 Am. St. Rep. 314, it was held that the owner of walls left standing after a fire owes adjoining owners the duty, after a reasonable time for investigation, of exercising such care in the maintenance of walls likely to fall on their property, as will absolutely prevent injury except from causes over which he would have no control, such as vis major, acts of public enemies, or acts of third persons which human foresight could not reasonably be expected to anticipate and prevent.

It has also been held that the owner of a building which is burned is liable for damages to another building caused by the falling of one of its walls which he had negligently left standing. City of Anderson v. East, 117 Ind. 126, 19 N. E. 726, 2 L. R. A. 712, 10 Am. St. Rep. 35; Sessengut v. Posey, 67 Ind. 408, 33 Am. Rep. 98; Dixon v. Washenheimer, 9 Ohio Cir. Ct. R. 401, 6 Ohio Cir. Dec. 380; Glover v. Mersman, 4 Mo. App. 90.

It has also been held that the owner of a wall left standing after a fire will be responsible for damages occasioned by its fall on adjacent property, although blown

down by high wind, where, although he knows of its dangerous condition, he neglects to take any precaution to support the wall, or to take it down so as to prevent its falling and injuring his neighbors, but allows the wall to remain in a dangerous state for several days until it is blown down and falls on a house situated on adjacent property. Nordheimer v. Alexander, 19 Can. Sup. Ct. 248.

The owner of a wall left standing after the destruction of a building by fire is under no obligation to adjoining property owners to remove or protect the wall until he has had a reasonable time to investigate and to take such precautions as are required. Ainsworth v. Lakin, supra; Mahoney v. Libbey, 123 Mass. 20, 25 Am. Rep. 6.

It has also been held that the owner of a wall left standing after a fire is not liable for its falling on adjoining property if he took every means to ascertain its safety that an ordinarily prudent man would have taken in similar circumstances, and believed it to be safe after such an investigation. Orr v. Bradley, 126 Mo. App. 146, 103 S. W. 1149.

The cases cited establish the general rules governing the duty of the owner of property on which is located a wall which has been rendered dangerous by reason of the destruction of the building, of which it formed a part, by fire. The duties imposed on the owner in such cases cannot be shifted to independent contractors. Young & Humphrey v. Trapp, 118 Ky. 813, 82 S. W. 429, 26 Ky. Law Rep. 752.

Whether the Louisville Bedding Company discharged the duties imposed on it by law is not material on the consideration of this appeal, but whether it could shift these duties to appellant is material. As soon as the Louisville Bedding Company could possibly act after the nuisance had been brought into being on its property, it took steps to abate the nuisance. Appellant was employed solely to abate the nuisance, and it cannot be held responsible for the failure of the Louisville Bedding Company to do all within its power to guard against injury to others which might be caused by the falling of the wall, if there was any such failure on the part of the owner. The duty of the appellant was to take down the wall. None of the duties imposed on the owner passed to appellant by reason of this agreement. It was not the duty of appellant to make the wall safe, or to take any

steps to guard against the falling of the wall. Its sole duty was to see to it that it did not discharge the duty of taking down the wall in such a negligent way as to increase the hazard to others, or in a manner calculated to cause injuries to others which would not have happened but for the negligent discharge of duty by appellant. To state it more clearly, it may be said that the duty of appellant was to exercise ordinary care in the performance of its duty, which was to take down the wall, and not to perform the duty in a way which was calculated to cause injury to others. If appellant negligently did something in the discharge of its duty which caused an injury which would not have happened but for the negligence of appellant, it is liable for the injury. Unless appellant negligently did the work in which it was engaged and as the result of that negligence the wall fell and injured appellee's property, there can be no recovery in this case by appellee. Appellant must have been guilty of affirmative negligence before it can be held responsible for damages resulting from the falling of the wall.

That appellant was exceedingly careful in preparing for the work which it must do is shown by the evidence. It appears that it did all that was in its power to guard against injury growing out of the work which was to be done by it. But there is some evidence that there was an effort to pull the wall towards the east, and that, in applying the force which was used in an effort to pull the wall to the east, it was caused to buckle and fall, with the result that the house in which appellee lived was crushed. It is true that appellant, conceding this evidence to be true, was endeavoring to pull the wall away from the residence of appellee; but, in spite of that, a part of the wall fell upon, or against, the house and destroyed it. The facts on this point are similar to the facts in the case of Ulshowski v. Hill, 61 N. J. Law, 375, 39 A. 904. The facts in that case were that the owner of a frame building was taking it down story by story. When he had taken all of it down but the first story, he left that story in safe condition, but third parties broke into the building and cut and carried away certain of the supports, leaving the building unsafe. In attempting to pull the building in one direction, it fell in the other, thereby causing a pole to fall on the adjoining premises injuring a child. The court held that there was no proof of negligence, as the owner of the building had no reason to believe that the laws of

nature would be reversed and that the building would fall opposite from the direction of the pulling force. While there is a similarity between the facts in that case and in this case on that one point, there is a difference to be noted which is material. The effort there was to pull the house over. It was a frame house. In the case before us, if the evidence of one witness is true, there was an effort to pull over a 50-foot brick wall four stories in height with windows at intervals. If the force was applied to the top of the wall and the wall broke, that part falling towards the east was calculated to kick the lower part towards the west. That would not be a reversal of the laws of nature. The great preponderance of the evidence is that the wall was not pulled, but taking into consideration the statement of this one witness, and the further statement of one of the employees of appellant that he was on top of the wall for the purpose of making a hitch so that the wall could be pulled we are not prepared to say that there was no evidence to support the contention of appellee that the work of taking down the wall was done in a negligent manner. One or two witnesses testified that in pulling the wall it was rocked from side to side. The great preponderance of the evidence is against the statement of these witnesses. If appellant in taking down the wall was unnecessarily and negligently rocking it from side to side, that fact was evidence tending to support the theory of appellee that appellant was negligent in the performance of its duty. This court has many times held that if the evidence is such that reasonable men might disagree as to whether a litigant was negligent, the issue of negligence is one for the jury, and that it only requires a scintilla of evidence about which reasonable men might differ. Barksdale's Adm'r v. Southern Railway Co., 199 Ky. 592, 251 S. W. 656. We are not much impressed with this evidence of negligence, but the jury is the trier of the facts, and although a court might be of the opinion that the evidence is not sufficient to sustain a verdict finding that there was negligence, yet the question should be submitted to the jury where there is any evidence of negligence.

It is contended by counsel for appellee that the doctrine of res ipsa loquitur applies in such cases. Probably it does in a suit against the owner of the property on which a dangerous wall has been left standing after a fire. But the same rule does not apply to the person who has been employed by the owner to abate the nuisance.

In the case of Teepen v. Taylor, 141 Mo. App. 282, 124 S. W. 1062, it was held that the fact that a wall, left standing after a fire, falls upon adjoining property raises the presumption that it was unsafe, and that the burden is upon the owner to exculpate himself. But this doctrine is not applicable to the person who is engaged by the owner to abate the nuisance. It was also held in the case of McNerney v. Forreister, 19 West, L. Rep. (Can.) 32, that if, after the lapse of a reasonable time to repair or brace the walls of a burned building, the building falls, the fact of its falling is sufficient evidence of its negligent bracing or repair to cast upon the owner the onus of showing that he took all reasonable precautions to prevent the building from falling. But that is not applicable to this case, as the appellant was under no duty to brace the wall to prevent its falling, as its duty extended no further than to brace the wall so that the work which it might do in taking down the wall would not cause it to fall on the adjoining lot. The work done in bracing the wall in this case related only to the duty of appellant in taking down the wall.

It is argued by counsel for appellant that the falling of the wall was a purely accidental occurrence, and for that reason no one is responsible because the injuria is wanting. If it was a purely accidental occurrence without negligence on the part of any one, it is true that no one is responsible for the resulting damages. Cooley on Torts (2d Ed.) 91; 31 C. J. 975. The evidence strongly conduces to show that it was purely an accidental occurrence; but there was some evidence, although slight, to the contrary.

The only negligence pleaded was that the defendant "pulled down, or caused to be pulled down, a brick wall upon the said home and residence of this plaintiff," and the only negligence attempted to be proved was that the defendant pulled the wall, and thereby caused it to buckle and fall on plaintiff's property. This issue was not fairly submitted to the jury. On the contrary, the given instruction was so abstract in form as to permit the jury to draw its own conclusions as to what acts constituted negligence. In the circumstances the given instruction was erroneous and prejudicial. In lieu of that instruction the court on another trial will instruct the jury as follows: "If you believe from the evidence that, on the occasion in question, the defendant, A. H. Bowman &

Co., actually pulled on the wall, and thereby caused it to fall upon and injure plaintiff's property, you will find for plaintiff; unless you so believe, you will find for defendant.''

Judgment reversed, and cause remanded for proceedings consistent with this opinion.